# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENNETH IDEL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-1553** |
| **SECRETARY JAMES M. LEBLANC ET AL** | **SECTION "G"(4)** |

## ORDER AND REASONS

Before the Court are Plaintiff Kenneth Idel's ("Plaintiff") and Defendant Dr. Casey McVea's ("McVea") objections to the Report and Recommendation of the United States Magistrate Judge assigned to this case.[1] Plaintiff, formerly incarcerated at Rayburn Correctional Center ("RCC"), filed a complaint under 42 U.S.C. § 1983, arguing that Defendants James M. LeBlanc ("LeBlanc"), Sandy McCain ("McCain"), Keith Bickham ("Bickham"), Beverly Kelly ("Kelly"), Jonathan Tynes ("Tynes"), Richard Pope ("Pope"), Theresa Knight ("Knight"), McVea, Dr. Raman Singh ("Singh"), and Tamyra Young ("Young") (collectively, "Defendants") violated his constitutional rights during and after a fight between Plaintiff and fellow inmate Brian Irvin ("Irwin").[2]

On August 30, 2017, Defendants filed a joint motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim.[3] Plaintiff filed an opposition on September 19, 2017.[4] On October 17, 2017, Plaintiff filed an Amended Complaint.[5] On October 31, 2017, Defendants

---

[1] Rec. Docs. 40, 41.

[2] Rec. Doc. 1.

[3] Rec. Doc. 27.

[4] Rec. Doc. 29.

[5] Rec. Doc. 31.

filed another motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.[6] On November 13, 2017, Plaintiff filed an opposition.[7] On March 2, 2018, the Magistrate Judge issued a partial Report and Recommendation, recommending that Defendants' motion to dismiss be granted in part as to Plaintiff's Section 1983 individual claims against Defendants LeBlanc, McCain, Bickham, Kelly, Tynes, Knight, Singh, and Young with prejudice, denied in part as to Plaintiff's Section 1983 individual claims against Defendants McVea and Pope, and granted in part as to Plaintiff's Section 1983 official capacity claims against Defendants.[8]

After reviewing the complaint, the motions to dismiss, the Magistrate Judge's Report and Recommendation, the objections, the record, and the applicable law, for the following reasons, the Court will adopt the Report and Recommendation in part by granting Defendants' motion to dismiss as to Plaintiff's Section 1983 individual capacity claims against Defendants LeBlanc, McCain, Bickham, Kelly, Tynes, Knight, Singh, and Young with prejudice and denying Defendants' motion to dismiss as to Plaintiff's Section 1983 individual capacity claim against Pope. Furthermore, the Court will reject the Magistrate Judge's recommendation that Defendants' motion to dismiss be denied as to Plaintiff's Section 1983 individual capacity claims against McVea and grant the motion to dismiss as to those claims. Last, the Court will adopt the Report's recommendation that the Court grant Defendants' motion to dismiss Plaintiff's Section 1983 official capacity claims as to all Defendants, however, it will reject the Magistrate Judge's

---

[6] Rec. Doc. 33.

[7] Rec. Doc. 35.

[8] Rec. Doc. 39.

recommendation that these claims be dismissed with prejudice and dismiss Plaintiff's 1983 official capacity claims without prejudice.[9]

## I.  Background

### A.  *Factual and Procedural Background*

On February 23, 2017, Plaintiff filed the Complaint, pursuant to 42 U.S.C. § 1983, against Defendants.[10] Plaintiff, a former inmate at the RCC, alleges that on November 10, 2015, a physical altercation occurred between Plaintiff and another inmate, Irvin, and that at least four correctional officers intervened to break up the fight, including Defendant Pope.[11] Plaintiff alleges that when attempting to restrain Plaintiff, Defendant Pope threw Plaintiff to the floor, dragged him, and then after Plaintiff was handcuffed, allegedly "dropped his right knee on [Plaintiff's] head, which smashed [Plaintiff's] face against the concrete floor and broke [Plaintiff's] jaw."[12] In the Complaint, Plaintiff contends that the RCC staff and leadership were deliberately indifferent in their alleged failure to provide Plaintiff with constitutionally required medical care.[13]

On August 30, 2017, Defendants filed a joint motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim.[14] Plaintiff filed an opposition on September 19, 2017.[15]

---

[9] The Court also notes that the Magistrate Judge cited 28 U.S.C. § 636(b)(1). This statute only apply to in forma papueris complaints. Here, the record indicates that Plaintiff was not proceeding IFP. Therefore, to the extent that the Magistrate Judge relies on this standard, the Court rejects those recommendations and will only consider the motions to dismiss under a Rule 12(b)(1) and Rule 12(b)(6) standard.

[10] Rec. Doc. 1.

[11] *Id.* at 7.

[12] *Id.*

[13] *Id.*

[14] Rec. Doc. 27. The Court will not address the merits of this motion to dismiss as the Plaintiff subsequently filed an amended complaint and this motion will be denied as moot.

[15] Rec. Doc. 29.

On October 17, 2017, Plaintiff filed an Amended Complaint.[16] On October 31, 2017, Defendants filed another motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.[17] On November 13, 2017, Plaintiff filed an opposition.[18]

The Magistrate Judge issued a partial Report and Recommendation on March 2, 2018.[19] On March 7, 2018, Defendant McVea filed Objections to the Report and Recommendation.[20] On March 8, 2018, Plaintiff filed Objections to the Magistrate Judge's Report and Recommendation.[21]

**B.    *Defendants' Arguments in Support of Motion To Dismiss***

In the motion to dismiss, Defendants first argue that to the extent that Plaintiff is asserting a monetary claim against Defendants in their official capacity, such claims are barred by the Eleventh Amendment and must be dismissed.[22] Defendants then turn to the specific claims against Defendants and argue that they should be dismissed pursuant to Rule 12(b)(6) as Plaintiff has failed to state a claim to relief that is plausible on its face.[23] Defendants first address Plaintiff's excessive force claim against Pope and argue that the claim should be dismissed because Pope

---

[16] Rec. Doc. 31.

[17] Rec. Doc. 33.

[18] Rec. Doc. 35.

[19] Rec. Doc. 39.

[20] Rec. Doc. 40.

[21] Rec. Doc. 41.

[22] Rec. Doc. 33-1 at 3.

[23] *Id.* at 4.

only used the required force to gain control of an inmate involved in a violent physical altercation with another inmate.[24]

Defendants then address Plaintiff's medical deliberate indifference claims. First, Defendants argue that Plaintiff's claim against Tynes should be dismissed as Plaintiff's only factual allegations against Tynes is that Plaintiff requested ice from Tynes and that Tynes did not provide it.[25] Defendants argue that this omission fails to rise to the level of deliberate indifference, particularly because Tynes is not a medical professional, there were no orders or prescriptions informing Tynes of any need for Plaintiff to have ice, and last because Plaintiff received ice from another prison employee later that afternoon.[26] Next, Defendants argue that Plaintiff's claims against McVea should be dismissed because, while Plaintiff may have disagreed with McVea's treatment plan, McVea used his medical training and judgment to provide treatment for Plaintiff and was clearly not deliberately indifferent to Plaintiff as McVea responded to Plaintiff's medical complaints with multiple examinations, prescriptions, and referrals.[27] As to Singh and Young, Defendants argue that Plaintiff's allegations that Singh and Young delayed scheduling an appointment with a specialist are conclusory at best.[28] Defendants contend that Plaintiff has failed to even allege that Singh or Young were deliberately indifferent to Plaintiff's needs nor that Plaintiff suffered any actual damage because of Singh and Young's alleged actions or omissions.[29]

---

[24] *Id.* at 5–6.

[25] *Id.* at 8.

[26] *Id.* at 8–9.

[27] *Id.* at 10–11.

[28] *Id.* at 11.

[29] *Id.* at 12.

Next, Defendants argue that Plaintiff's claims against the remaining defendants, LeBlanc, McCain, Bickham, Kelly, and Knight should be dismissed as Plaintiff's claims against them are based entirely upon their position as supervisors within the DOC and RCC.[30] Defendants argue that to assert a claim against a supervisory official, Plaintiff must plausibly allege that a supervisor was personally involved in the acts that caused the alleged deprivation of constitutional rights or that there was a causal connection between the supervisor's act and the alleged constitutional violation.[31] Because Defendants argue that Plaintiff has alleged neither, Defendants assert that Plaintiff's claims against these Defendants should be dismissed for failure to state a claim upon which relief can be granted.[32]

Last, Defendants argue that if the Court decides that Plaintiff has stated a plausible claim for relief against any of the Defendants, the Defendants are entitled to qualified immunity, "as they were public officials performing their official duties and their conduct in performance of said duties did not violate any clearly established statutory or constitutional rights of the Plaintiff."[33]

## C.  *Plaintiff's Arguments in Opposition*

In opposition, Plaintiff first asks the Court to delay a finding as to Defendants' qualified immunity argument until the parties complete discovery.[34] Next, Plaintiff contends that the Amended Complaint validly asserts an excessive force claim against Pope because at the time

---

[30] *Id.*

[31] *Id.*

[32] *Id.* at 13.

[33] *Id.* at 14–18.

[34] Rec. Doc. 35.

Pope "kneed" Plaintiff, Plaintiff posed no threat as he was handcuffed and lying face down on the floor.[35]

Plaintiff then turns to his medical deliberate indifference claims against the remaining Defendants. Plaintiff argues that McVea acted with deliberate indifference when he failed to immediately send Plaintiff to the hospital after McVea examined him following the November 2015 physical altercation and when McVea "withheld" Plaintiff's Tramadol prescription.[36] As to Defendants LeBlanc, McCain, Bickham, Kelly, and Knight, Plaintiff argues that these supervisors were deliberately indifferent because they maintained "a deficient and unconstitutional health care system," which resulted in Plaintiff not being provided essential medical are in a timely fashion.[37] Last, Plaintiff asks the Court for leave to amend the Amended Complaint.[38]

### D.    Report and Recommendation Findings

The Magistrate Judge recommends that Defendant's motion to dismiss be granted as to Plaintiff's Section 1983 individual claims against Defendants LeBlanc, McCain, Bickham, Kelly, Tynes, Knight, Singh, and Young with prejudice for failure to state a claim upon which relief can be granted and recommends denying Defendants' motion to dismiss as to Plaintiff's Section 1983 individual claims against McVea and Pope.[39]

First, the Report addresses Plaintiff's official capacity claims.[40] The Report notes that Defendants contend that the claims against them for monetary damages in their official capacities

---

[35] *Id.* at 6.
[36] *Id.* at 8.
[37] *Id.* at 10.

[38] *Id.*

[39] Rec. Doc. 39.

[40] *Id.* at 5.

are barred under the Eleventh Amendment.[41]  The Magistrate Judge agreed, determining that because the State has not waived its immunity under the Eleventh Amendment, Plaintiff's § 1983 claims against Defendants in their official capacity must be dismissed with prejudice under Rule 12(b)(1).[42]

The Magistrate Judge then addressed Plaintiff's excessive force claim against Defendant Pope.[43] Defendant Pope argues that Plaintiff never alleged that Pope intended to cause harm when he broke up the fight between Plaintiff and the other inmate, and that the Amended Complaint admits that Pope was attempting to gain control of a combative inmate, making the use of force necessary.[44] Plaintiff contends that the Amended Complaint articulated that Pope broke Plaintiff's jaw intentionally and that Pope kneed the back of Plaintiff's head into a concrete walkway without reason, as Plaintiff was already in handcuffs and lying on the ground.[45] After reviewing the United States Supreme Courts cases, *Hudson v. McMillian* and *Whitley v. Albers*, the Magistrate Judge found that Plaintiff sufficiently pleaded a claim for excessive force against Pope in the Complaint and that whether the force applied by Pope was necessary, the result of a perceived threat, or could have been tempered, is not clear from the record.[46] The Magistrate Judge also found that Pope was not entitled to qualified immunity and that therefore Plaintiff's claim against Pope should proceed.[47]

---

[41] *Id.* at 5–6.

[42] *Id.*

[43] *Id.* at 6.

[44] *Id.*

[45] *Id.*

[46] *Id.* at 6–8.

[47] *Id.* at 8–10.

The Report then addressed Plaintiff's claims of medical indifference against Defendants Tynes, McVea, Singh, and Young, who contend that these claims should be dismissed.[48] The Magistrate Judge acknowledged Plaintiff's reliance on the Eleventh Circuit decision *Surber v. Dixie County Jail*, but explained that the applicable standard for providing constitutional medical care was established by the United States Supreme Court in *Estelle v Gamble*.[49] The Magistrate Judge stated that the standard for deliberate indifference is that the alleged deprivation is sufficiently serious and that the defendant possessed a culpable state of mind.[50]

The Magistrate Judge first addressed Plaintiff's allegation that Tynes did not provide Plaintiff ice when requested by Plaintiff but that Plaintiff was then provided with ice later in the day.[51] The Magistrate Judge found that Tynes' failure to provide ice does not mean that Tynes knew and disregarded an excessive risk to Plaintiff's health.[52] Therefore, the Magistrate Judge recommended that Plaintiff's claims against Tynes be dismissed for failure to state a claim upon which relief may be granted.[53]

The Report next addressed Plaintiff's claim against McVea, a doctor at RCC, and Plaintiff's claim that McVea's decision to delay the use of Tramadol and to place Plaintiff on a modified, but not liquid, diet constituted deliberate indifference.[54] McVea argues that Plaintiff's

---

[48] *Id.* at 10.

[49] *Id.*

[50] *Id.* at 10–11.

[51] *Id.* at 12.

[52] *Id.*

[53] *Id.*

[54] *Id.*

claims against McVea must fail because McVea used his medical training and judgment.[55] According to the Report, Plaintiff alleged that another RCC doctor, Dr. Starnes, prescribed Plaintiff ibuprofen and ordered that Plaintiff receive a soft diet and that Dr. Christianson, a hospital surgeon, prescribed Plaintiff Tramadol and a full liquid diet.[56] Plaintiff also claims that Dr. Esenou, another hospital doctor, prescribed Plaintiff Tramadol and a soft diet.[57] Plaintiff claims he did not receive the Tramadol until February 27, 2016, and that Dr. McVea refused to reorder Ensure for him, "result[ing] in six months of pain and continued discomfort in his mouth, misalignment of the jaw, and difficulty chewing."[58] The Magistrate Judge determined that a question remained regarding whether McVea, knowing the substantial risk to Plaintiff's health, responded in reasonable way, by only administering ibuprofen when the two non-prison doctors prescribed Plaintiff Tramadol, and by failing to provide Plaintiff with a liquid diet.[59] Therefore, the Magistrate Judge found that Plaintiff had stated a claim against McVea.[60] The Magistrate Judge also determined that McVea was not entitled to qualified immunity, as Defendants do not dispute that Plaintiff's broken jaw posed a substantial health risk and because Plaintiff alleges McVea failed to administer Tramadol or provide a liquid diet, despite it being prescribed by hospital physicians.[61]

---

[55] *Id.*

[56] *Id.* at 13.

[57] *Id.*

[58] *Id.* at 13–14.

[59] *Id.*

[60] *Id.* at 15.

[61] *Id.* at 16.

Next, the Magistrate Judge addressed Plaintiff's claims against Singh and Young.[62] The Report states that while Plaintiff filed an opposition to Defendants' motion to dismiss, he did not address his claims against Singh and Young.[63] According to the Report, Plaintiff alleges that Young and Singh scheduled Plaintiff's surgery appointment 21 days after the prisoner altercation and neither Young nor Singh scheduled his follow up appointment after his first surgical procedure was cancelled.[64] The Report found that Plaintiff made no allegation that Young or Singh knew of the hospital's instruction to reschedule Plaintiff's surgical appointment as soon as possible.[65] Accordingly, the Magistrate Judge recommended that Plaintiff's claims against Young and Singh be dismissed for failure to state a claim.[66]

Last, the Magistrate Judge turned to Plaintiff's claims against Defendants LeBlanc, McCain, Bickham, Kelly, and Knight.[67] The Report determined that these five Defendants are supervisors and that Plaintiff's claims against them implicate vicarious liability.[68] The Magistrate Judge explained that the only way supervisors could be vicariously liable for Plaintiff's diet or the need to reschedule his surgical appointment is if the supervisors were directly involved or if they failed to train their subordinates, which the Magistrate Judge found Plaintiff never alleged.[69] Therefore, to hold these supervisors liable, the Magistrate Judge explained that Plaintiff would

---

[62] *Id.*

[63] *Id.* at 17.

[64] *Id.*

[65] *Id.*

[66] *Id.* at 18.

[67] *Id.*

[68] *Id.* at 19.

[69] *Id.* at 19–20.

need to prove Defendants were 'personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the defendant] and the alleged constitutional violation."[70] The Magistrate Judge determined that Plaintiff failed to allege that these Defendants were personally involved in any acts that caused the deprivation of his constitutional rights or that a causal connection existed between any of these Defendants' acts and the alleged constitutional violation.[71] As such, the Report recommends that the claims against Defendants LeBlanc, McCain, Bickham, Kelly, and Knight be dismissed for failure to state a claim.[72]

### C.    *Plaintiff's Objections*

Plaintiff objects to the "limited factual findings" in the Report and Recommendation and the Magistrate Judge's conclusion that claims against Defendants LeBlanc, McCain, Bickham, Kelly, Tynes, Knight, Singh, and Young should be dismissed.[73]

As to the Magistrate Judge's factual findings, Plaintiff contends that the Report and Recommendation does not address the Plaintiff's "detailed" claims against Defendants, which Plaintiff argues renders the Report's legal analysis inaccurate.[74] As to the Magistrate Judge's legal conclusions, Plaintiff argues that the Complaint alleges sufficient facts to show that Defendants violated Plaintiff's Eighth Amendment rights.[75] Plaintiff relies on an Eleventh Circuit case, *Suber*

---

[70] *Id.* at 20 (quoting in part *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981)).

[71] *Id.*

[72] *Id.*

[73] Rec. Doc. 41.

[74] *Id.* at 6.

[75] *Id.*

*v. Dixie County Jail*, for what Plaintiff argues is the "appropriate and constitutional care that should be given to inmates with injuries similar" to Plaintiff's.[76] Plaintiff argues that because he did not receive the same level of medical care as in *Suber*, Plaintiff's constitutional rights were violated and that this demonstrates that the named Defendants acted with deliberate indifference toward Plaintiff's medical needs.[77]

Plaintiff then transitions to the Report's conclusions about particular Defendants, beginning with Defendant Tynes.[78] Plaintiff contends that the Magistrate Judge mischaracterizes the Amended Complaint's allegations regarding Tynes.[79] The Magistrate Judge found that Plaintiff did not allege that Tynes was aware of a doctor's order to provide Plaintiff with ice and determined that Tynes' failure to provide ice did not mean Tynes "knew and disregarded an excessive risk to [Plaintiff's] health."[80] Plaintiff contends that this is mischaracterization of his argument because Plaintiff eventually received ice from a nonmedical correctional officer in a separate unit because the "medical need for it was so apparent that every laymen would recognize that care was required."[81] Plaintiff contends his claim against Tynes should not be dismissed because Tynes "chose not to provide [Plaintiff] with the treatment he needed despite its availability . . . and his clear duty to do so."[82]

---

[76] *Id.* at 7.

[77] *Id.*

[78] *Id.* at 8.

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.*

Next, Plaintiff addresses his claims against Defendants LeBlanc, McCain, Bickham, Kelly and Knight, arguing that the Magistrate Judge is incorrect in the Report's conclusion that Plaintiff is seeking vicarious liability against these Defendants, but rather that the Amended Complaint articulates that each of these Defendants directly violated Plaintiff's constitutional rights by "knowingly maintaining a deficient and unconstitutional health care system for inmates."[83] Plaintiff contends that these Defendants knew or should have known of the constitutional problems related to medical care at the DOC and the RCC and that they "intentionally disregarded the risks" caused by a medical care system which allegedly fails to provide prescribed medical diets and access to essential care.[84] Furthermore, Plaintiff asserts that Defendants had direct knowledge of Plaintiff's "situation" because he made emergency sick calls and wrote to Defendant LeBlanc, who allegedly responded to Plaintiff's complaints but did not resolve the alleged unconstitutional care Plaintiff was receiving.[85] Plaintiff claims this "omission" constitutes deliberate indifference under the Eighth Amendment.[86]

Last, Plaintiff turns to Defendants Singh and Young, whom Plaintiff contends were responsible for scheduling medical appointments at facilities outside of the DOC.[87] Plaintiff argues that Singh and Young received notice that Plaintiff had broken his jaw on November 17, 2015, and scheduled an appointment for him 21 days after such notice, "fully aware of the consequences

---

[83] *Id.* at 8–9.

[84] *Id.*

[85] *Id.* at 9.

[86] *Id.* at 10.

[87] *Id.*

of not immediately treating a broken jaw."[88] Plaintiff characterizes this as a "deliberate decision" that violated Plaintiff's right to medical care and caused unnecessary pain and suffering.[89]

### D.    *Dr. McVea's Objections*

Defendant McVea objects to the Magistrate Judge's recommendation that Plaintiff's claims against McVea should be allowed to proceed.[90] McVea objects to "a minor but important misreading of Plaintiff's factual allegations as to Dr. McVea" and argues that the legal conclusions reached by the Magistrate Judge are inconsistent with Fifth Circuit precedent.[91]

As to the factual allegations regarding McVea, McVea notes that the Report and Recommendation states that Plaintiff alleges in the Amended Complaint that McVea failed to follow the treatment plan prescribed to Plaintiff, which included a "soft" diet, and that Plaintiff never received a liquid diet.[92] McVea notes that in the Amended Complaint, Plaintiff alleges that after being examined by Defendant McVea and Dr. Starnes, Dr. Starnes ordered that Plaintiff should receive a "soft" diet and that Plaintiff's food service was modified, as he began receiving fruit and a bottle of Ensure.[93] McVea notes that Plaintiff admits that he was provided Ensure in the Amended Complaint, which McVea characterizes as a liquid nutritional supplement, because Plaintiff alleges that in March 2016, McVea refused to reorder it.[94]

---

[88] *Id.*

[89] *Id.*

[90] Rec. Doc. 40.

[91] *Id.* at 2.

[92] *Id.*

[93] *Id.*

[94] *Id.*

As to the legal conclusions reached in the Report and Recommendation, McVea alleges that they are inconsistent with prevailing Fifth Circuit precedent on (1) prescribing pain medications, (2) differing medical treatment decisions, and (3) alleged delays in medical care.[95]

McVea discusses the first two issues, the prescription of pain medications and differing medical treatment decisions, together.[96] McVea argues that Plaintiff admits: (1) he was prescribed ibuprofen by Dr. Starnes the same day he was initially examined by Drs. Starnes and McVea; (2) Plaintiff continued to receive ibuprofen; and (3) McVea began prescribing Plaintiff Tramadol on February 27, 2016.[97] McVea argues that merely because Plaintiff alleges that other doctors previously prescribed Plaintiff Tramadol in December 2015 and early February 2016 did not entitle Plaintiff to receive it from that point forward until when Dr. McVea began prescribing it in late February 2016.[98]

McVea challenges the Report's conclusion, which cites a case from the Tenth Circuit, holding that a doctor refusing to provide a prescription issued by a different doctor is sufficient to state an Eighth Amendment claim.[99] McVea asserts that the Fifth Circuit in *Stewart v. Murphy* wrote that merely because a doctor did not follow the recommendations of another doctor does not constitute deliberate indifference.[100] Furthermore, McVea asserts that the Fifth Circuit has repeatedly addressed prisoners' claims of inadequate or incorrect prescriptions of pain medication

---

[95] *Id.* at 2–3.

[96] *Id.* at 3.

[97] *Id.*

[98] *Id.*

[99] *Id.*

[100] *Id.* at 3–4.

and has regularly determined that such decisions were in the doctor's discretion and did not constitute deliberate indifference under the Eighth Amendment.[101]

Last, McVea objects to the Magistrate Judge's conclusion that there are sufficient questions regarding the alleged delay in Plaintiff receiving outside medical care for a surgical assessment.[102] McVea asserts that this case is distinguishable from the cases cited by the Magistrate Judge, where a prisoner's medical issues were ignored and prison officials intentionally delayed medical care or referrals.[103] McVea argues that such a conclusion is not supported by Plaintiff's pleadings as Plaintiff was examined immediately after the initial "incident," which only showed a laceration to the Plaintiff's lip, and that Plaintiff makes no allegations in the Amended Complaint that he alerted the RCC medical staff to any issues with his jaw or that RCC staff noted any such issues.[104] McVea alleges that Plaintiff's own allegations demonstrate that McVea did not ignore Plaintiff's complaints, refuse to treat him, or treat him incorrectly.[105] Furthermore, McVea asserts that the Amended Complaint does not allege that McVea demonstrated any behavior that would show a

---

[101] *Id.* at 4 (citing *Blank v. Bell*, 634 F. App'x 445, 449 (5th Cir. 2016) (unpublished); *Burton v. Owens*, 511 F. App'x 385, 389-90 (5th Cir. 2013) (unpublished); *Iruegas v. Poe*, 374 F. App'x 513, 517 (5th Cir. 2010) (unpublished); *Bunton v. Corr. Corp. of Am.*, 286 F. App'x 242, 243-44 (5th Cir. 2008) (unpublished); *Clifford v. Doe*, 303 F. App'x 174, 175-76 (5th Cir. 2008) (unpublished); *Baez v. INS*, No. 06-30112, 2007 U.S. App. LEXIS 20048, at *2-5 (5th Cir. Aug. 22, 2007) (unpublished); *Porter v. Hemphil*, 244 F. App'x 568, 569 (5th Cir. 2007) (unpublished); *Chambers v. Jeter*, 247 F. App'x 490, 491 (5th Cir. 2007) (unpublished); *Williams v. Bearry*, 273 F.3d 1096 (5th Cir. 2001) (unpublished); *Williams v. Chief of Med. Operations, Tarrant Cty. Jail*, No. 94-10115, 1994 U.S. App. LEXIS 40963, at *6 (5th Cir. Dec. 27, 1994) (unpublished); *Chaney v. Richards*, No. 94-50203, 1994 U.S. App. LEXIS 42383, at *2 (5th Cir. Nov. 17, 1994)).

[102] *Id.*

[103] *Id.* at 5.

[104] *Id.*

[105] *Id.*

wanton disregard for Plaintiff's serious medical needs.[106] McVea points to the following allegations in the Amended Complaint:

> 1) that on November 17, 2015, the first time Dr. McVea and Dr. Starnes saw Plaintiff, Dr. McVea "instructed Dr. Starnes to fill out an urgent referral form to DOC headquarters for Mr. Idel to have oral surgery", 2) that Defendants Singh and Young scheduled an appointment for Plaintiff for December 3, 2015; and 3) that Plaintiff was transported to and seen by a specialist at University Hospital on December 3, 2015 (wherein Dr. Christianson initially scheduled Plaintiff for surgery on December 11, 2015 and subsequently cancelled said surgery). Following this time period, Plaintiff alleges that he made one sick call on January 12, 2016, that he was examined by Dr. Starnes on January 19, 2016, and that Plaintiff was seen by a specialist at University Hospital for follow-up appointments on February 17, 2016 and "in early May of 2016."[107]

McVea argues that Plaintiff's own allegations demonstrate that McVea appropriately and immediately reacted by requesting Plaintiff see a specialist and by prescribing Plaintiff pain medication and a soft diet "during the relevant periods."[108] McVea relies on three Fifth Circuit cases, which McVea analogizes to show that Plaintiff has not stated a claim against McVea for deliberate indifference.[109]

## II. Legal Standards

### A.   Standard on a Rule 12(b)(1) Motion to Dismiss

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by the Constitution and statute."[110] Thus, under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to

---

[106] *Id.*

[107] *Id.* at 5–6.

[108] *Id.* at 6.

[109] *Id.* at 6–7 (citing *Harris v. Hegmann*, 198 F.3d 153, 160 (5th Cir. 1999) , *Oakley v. Hudson*, 670 F. App'x 291, 292 (5th Cir. 2016)(unpublished); *Thomas v. Carter*, 593 F. App'x 338 (5th Cir. 2014)(unpublished).

[110] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

adjudicate the case."[111] In ruling on a Rule 12(b)(1) motion to dismiss, the Court may rely on: (1) the complaint alone, presuming the allegations to be true; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts.[112] The plaintiff, as the party asserting jurisdiction, has the burden of proving subject matter jurisdiction by a preponderance of the evidence.[113]

**B.     *Standard on a Rule 12(b)(6) Motion to Dismiss***

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[114] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[115] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[116] "Factual allegations must be enough to raise a right to relief above the speculative level."[117] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[118]

---

[111] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1000 (5th Cir. 1998) (internal citation omitted).

[112] *Den Norske Stats Ojeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). *See also Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

[113] *See Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (internal citations omitted).

[114] Fed. R. Civ. P. 12(b)(6).

[115] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[116] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[117] *Twombly*, 550 U.S. at 556.

[118] *Id.* at 570.

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[119] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[120] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[121] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[122] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[123] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[124] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[125] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[126]

## C.   *Legal Standard on Qualified Immunity*

To plead a Section 1983 claim, Plaintiff is required to allege facts demonstrating that (1)

---

[119] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[120] *Iqbal*, 556 U.S. at 677–78.

[121] *Id.* at 679.

[122] *Id.* at 678.

[123] *Id.*

[124] *Id.*

[125] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[126] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

the defendant violated the Constitution or federal law, and (2) that the defendant was acting under the color of state law while doing so.[127]

The doctrine of qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[128] Qualified immunity is an "immunity from suit rather than a mere defense to liability."[129] In this manner, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[130] Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[131]

In *Saucier v. Katz*, the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity.[132] Part one asks the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[133] Part two inquires into whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[134] The Court does not have to address these two questions

---

[127] *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

[128] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[129] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

[130] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[131] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[132] 533 U.S. 194 (2001).

[133] *Id.* at 201.

[134] *Id.* at 202.

sequentially; it can proceed with either inquiry first.[135]

"If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'"[136] Officials "who reasonably but mistakenly commit a constitutional violation are entitled to immunity."[137]

In the context of a motion to dismiss, "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'"[138] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[139] After the district court determines that plaintiff's pleadings meet this requirement, "if the court remains 'unable to rule on the immunity defense without further clarification of the fact,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'"[140]

## D.    Review of the Magistrate Judge's Report and Recommendation

In accordance with Local Rule 73.2, this case was referred to the Magistrate Judge to provide a Report and Recommendation. A district judge "may accept, reject, or modify the

---

[135] *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."); *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014).

[136] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)).

[137] *Williams*, 180 F.3d at 703 (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001)).

[138] *Backe*, 691 F.3d at 648 (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.2d 991, 994 (5th Cir. 1995)).

[139] *Id.* at 645.

[140] *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987)).

recommended disposition" of a magistrate judge on a dispositive matter.[141] A district judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[142] A district court's review is limited to plain error for parts of the report which are not properly objected to.[143]

### III. Law and Analysis

#### A. *Plaintiff's Claims Against Defendants in their Official Capacities*

In the motion to dismiss, Defendants argue that to the extent that Plaintiff is asserting a monetary claim against Defendants in their official capacity, such claims are barred by the Eleventh Amendment and must be dismissed. Plaintiff does not address Defendants' argument in the opposition to Defendants' motion to dismiss and did not object to the Report and Recommendation's finding that the Eleventh Amendment bars monetary claims against these Defendants in their official capacity.

As the Fifth Circuit has explained, a claim for monetary damages against a state employee in his official capacity is barred by the Eleventh Amendment.[144] Moreover, claims that are barred by the Eleventh Amendment must be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).[145] Therefore, reviewing for plain error and finding none, the Court adopts the Magistrate Judge recommendation that the official-capacity claims against Defendants be dismissed pursuant to Rule 12(b)(1); however, unlike the Magistrate's recommendation, the Court

---

[141] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[142] Fed. R. Civ. P. 72(b)(3).

[143] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[144] *Williams v. Thomas*, 169 F. App'x 285, 286 (5th Cir. 2006).

[145] *Id.*

finds that because these claims are barred by the Eleventh Amendment, they must be dismissed without prejudice, as the Court lacks subject matter jurisdiction over them.[146]

**B.    *Plaintiff's Individual Capacity Claims Against Tynes***

Plaintiff claims that Tynes was deliberately indifferent to Plaintiff's medical care when Tynes failed to provide Plaintiff with ice for his injured jaw. The Report and Recommendation determined that the "the failure to provide ice does not mean that Tynes knew and disregarded an excessive risk to Idel's health." In Plaintiff's Objections to the Report and Recommendation, Plaintiff argues that Tynes was deliberately indifferent because, as evidenced by another prison official allegedly giving him ice, even nonmedical prison officials could tell that Plaintiff required ice.

Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs are actionable under Section 1983. A prison official acts with deliberate indifference if he/she has actual knowledge of substantial risk of harm and disregards that risk. "[D]isagreement between an inmate and his physician concerning whether certain medical care was appropriate is actionable under § 1983 only if there were exceptional circumstances."[147]

As explained above, Plaintiff's only claim against Tynes was that he did not receive ice after requesting it from Tynes. Plaintiff provides no facts to support an allegation that Tynes was substantially aware of the risk of substantial harm, beyond asserting in the Objections that another prison official later gave Plaintiff ice. Accordingly, on *de novo* review, the Court adopts the Magistrate Judge's recommendation that to grant Defendants' motion to dismiss with prejudice as

---

[146] *See id.*
[147] *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991)). *See also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

to Plaintiff's medical claim against Tynes in his individual capacity for failure to state a claim upon which relief may be granted.

## C.     *Plaintiff's Individual Capacity Claims Against Singh and Young*

Plaintiff also claims that Defendants Singh and Young, whom Plaintiff contends were responsible for scheduling medical appointments at facilities outside of the DOC, were deliberately indifferent to Plaintiff's medical care. In the Amended Complaint, Plaintiff alleges that Dr. Christianson scheduled Plaintiff for surgery and later canceled the surgical appointment. Plaintiff alleged that he believes that neither Young nor Singh scheduled the follow-up appointment after cancellation of the surgical procedure, as directed by the doctor, but provides no factual allegations that the doctor directed them to do so. In the Objections to the Report and Recommendation, Plaintiff does not raise the issue of the rescheduling of the surgical appointment, but argues instead that Singh and Young received notice that Plaintiff had broken his jaw on November 17, 2015 and scheduled an appointment for him 21 days after such notice, "fully aware of the consequences of not immediately treating a broken jaw."[148] Plaintiff characterizes this as a "deliberate decision" that violated Plaintiff's right to medical care and caused unnecessary pain and suffering.

As explained above, claims of deliberate indifference by prison personnel to a prisoner's serious medical needs are actionable under Section 1983. A prison official acts with deliberate indifference if he/she has actual knowledge of substantial risk of harm and disregards that risk. "[D]isagreement between an inmate and his physician concerning whether certain medical care was appropriate is actionable under § 1983 only if there were exceptional circumstances."[149]

---

[148] Rec. Doc. 41 at 10.

[149] *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991)); *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Further, a delay in medical care may constitute an Eighth Amendment violation only if there has been deliberate indifference, which resulted in substantial harm.[150]

In the Amended Complaint, Plaintiff failed to allege that either Young or Singh were deliberately indifferent to Plaintiff's medical needs, only that they scheduled his surgery 21 days after his original injury. Plaintiff fails to provide any factual allegations that would make it plausible that Young or Singh were of a culpable mind or that the alleged delay in scheduling the surgery caused substantial harm. Accordingly, on *de novo* review, the Court adopts the Magistrate Judge's recommendation to grant Defendants' motion to dismiss with prejudice as to Plaintiff's medical claim against Young and Singh in their individual capacities for failure to state a claim upon which relief may be granted.

**D.       *Plaintiff's Individual Capacity Claims Against McVea***

Next, the Court will address Plaintiff's individual claims against McVea. In the Amended Complaint, Plaintiff alleges that McVea's actions toward Plaintiff's medical care constituted medical indifference. Specifically, Plaintiff alleges that Defendant McVea failed to provide Plaintiff with a liquid diet, despite being prescribed one by other doctors, and that McVea failed to provide Plaintiff with Tramadol until late February 2016, despite two hospital doctors prescribing it for Plaintiff, one in December 2015 and one in early February 2016. The Magistrate Judge found that there existed a question of whether, knowing there was a substantial risk to Plaintiff's health, McVea acted reasonably when he only provided Plaintiff with ibuprofen. In his Objections, McVea argues that under Fifth Circuit precedent, a difference in medical opinion does

---

[150] *Easter v. Powell*, 467 F.3d 459, 461 (5th Cir. 2006).

not constitute deliberate indifference and that the Fifth Circuit has repeatedly determined that decisions on what pain medications to prescribe are in a doctor's discretion.

The Report and Recommendation states that a doctor's failure to provide a prescription issued by another doctor is sufficient to state a claim under the Eighth Amendment, citing the Tenth Circuit decision in *Hunt v. Uphoff*.[151] While that may be the case under Tenth Circuit precedent, the Fifth Circuit has repeatedly and consistently determined that a doctor's failure to follow the advice of another doctor or provide medication prescribed by another doctor is not sufficient to state a claim for medical indifference, but rather only indicates a difference in medical opinion.[152] In the analysis in this section of the Report, the Magistrate Judge relies on cases from the Second, Seventh, and Tenth Circuit cases, while failing to mention relevant Fifth Circuit precedent on the legal standard for differences in medical opinion and alleged delays in treatment.

The Fifth Circuit has held that to demonstrate deliberate indifference in the medical context, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[153] Further, "a doctor's failure to follow the advice of another doctor suggests nothing more than a difference in medical opinion."[154] Neither unsuccessful medical treatment nor mere negligence rises to the level of deliberate indifference.[155]

---

[151] Rec. Doc. 39 at 14 (citing 199 F.3d 1220, 1223-24 (10th Cir. 1999)).

[152] *See, e.g., Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999). Maybe add some newer cases

[153] *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985)).

[154] *Clifford v. Doe*, 303 F. App'x 174, 176 (5th Cir. 2008) (citing *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999)).

[155] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (citing *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985) and *Fielder v. Bosshard,* 590 F.2d 105, 107 (5th Cir.1979)).

A delay in medical care may constitute an Eighth Amendment violation if there has been deliberate indifference, which resulted in substantial harm.[156]

Here, Plaintiff has failed to sufficiently plead deliberate indifference by McVea. In the Complaint and Amended Complaint, Plaintiff failed to allege any facts that show that McVea's failure to provide Plaintiff with a liquid diet or his delay in providing Plaintiff with Tramadol is anything more than reflective of a difference in medical opinion from the hospital doctors who had earlier prescribed Plaintiff Tramadol and a special diet. Further, Plaintiff has not alleged any facts that show that McVea was aware of a substantial risk to Plaintiff's health by failing to prescribe him either Tramadol or a liquid diet. Rather, Plaintiff has alleged facts that weigh against his claim that McVea acted with deliberate indifference, including that McVea provided Plaintiff with Ensure, though not consistently;[157] modified Plaintiff's diet, though not converting it into a fully liquid one;[158] and kept Plaintiff on ibuprofen and several months later began providing Plaintiff with Tramadol.[159]

Last, Plaintiff complains that McVea's failure to send him to the hospital immediately after McVea examined him on November 17, 2017, constitutes medical indifference. However, Dr. McVea did not ignore Plaintiff's injuries, but rather, according to Plaintiff's own allegations in the Amended Complaint, directed his staff to immediately fill out an urgent referral form for Plaintiff to have oral surgery.[160] Plaintiff alleges that McVea continued to treat Plaintiff and recommended

---

[156] *Easter v. Powell*, 467 F.3d 459, 461 (5th Cir. 2006).

[157] Rec. Doc. 32 at 10, 12.

[158] *Id.* at 10.

[159] *Id.* at 9, 10.

[160] *Id.* at 9.

urgent medical care. None of these factual allegations evince a "wanton disregard for any serious medical needs" and therefore Plaintiff has failed to assert a deliberate indifference claim against McVea.

Accordingly, on *de novo* review, the Court rejects the Magistrate Judge's recommendation that Defendants' motion to dismiss as to Plaintiff's medical claim against McVea be denied and determines that Defendants' motion to dismiss as to Plaintiff's Section 1983 individual claims against McVea should be dismissed with prejudice for failure to state a claim upon which relief may be granted.

**E.        *Plaintiff's Claims Against Defendants LeBlanc, McCain, Bickham, Kelly and Knight***

Plaintiff brings claims against Defendants LeBlanc, McCain, Bickham, Kelly and Knight, asserting that these Defendants were responsible for the operations and medical care of inmates and the medical treatment they received at RCC. The Magistrate Judge found that Plaintiff's claims against these Defendants implicate vicarious liability, so that the only way they could be held liable were if the Defendants were directly involved in the alleged constitutional violation or if they failed to train their subordinates, as there is no respondeat superior liability under section 1983. The Magistrate Judge found that Plaintiff failed to allege either in his Complaint and that therefore, Plaintiff's claims against these Defendants must be dismissed for failure to state a claim upon which relief can be granted.

In his Objections, Plaintiff asserts that he was not asserting vicarious liability against these Defendants, but rather that these Defendants were "knowingly maintaining a deficient and unconstitutional health care system for inmates at RCC" and that these Defendants had direct knowledge of Plaintiff's situation. To find these Defendants liable, Plaintiff must establish either that the defendants were "personally involved in the acts causing the deprivation of his

constitutional rights or that a causal connection exists between an act of [the defendant] and the alleged constitutional violation."[161] Here, Plaintiff has not sufficiently pleaded either in his Complaint or his Amended Complaint. Furthermore, the Fifth Circuit has stated that this test cannot be met if there is no underlying constitutional violation.[162] As the Court has found that Plaintiff has failed to sufficiently plead a constitutional violation related to the medical treatment he received, his claims against these supervisory Defendants cannot proceed. Accordingly, on *de novo* review, the Court adopts the Magistrate Judge's recommendation to grant Defendants' motion to dismiss with prejudice as to Plaintiff's claims against Defendants LeBlanc, McCain, Bickham, Kelly and Knight for failure to state a claim upon which relief may be granted.

## F.      *Plaintiff's Claims Against Pope*

In the Report and Recommendation, the Magistrate Judge recommended that Defendants' motion to dismiss as to Plaintiff's claims against Pope should proceed because Plaintiff had sufficiently pleaded a claim for excessive force and because whether the force applied by Pope was necessary, the result of a perceived threat or could have been tempered, is not clear from the record. Further, the Magistrate Judge found that Pope was not entitled to qualified immunity. As Pope did not object to the Report and Recommendation, finding no plain error,[163] the Court will adopt the Magistrate Judge's recommendation that Defendants' motion to dismiss as to Plaintiff's claim for excessive force against Pope be denied.

---

[161] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981).

[162] *Rios v. City of Del Rio*, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing *Breaux v. City of Garland,* 205 F.3d 150, 161 (5th Cir. 2000)).

[163] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

## IV. Conclusion

For the reasons stated above, the Court adopts the Magistrate Judge's Report and Recommendation in part, granting Defendants' motion to dismiss with prejudice as to Plaintiff's Section 1983 claims against Defendants LeBlanc, McCain, Bickham, Kelly, Knight, Young, Singh, and Tynes in their individual capacities for failure to state a claim for which relief can be granted and denying Defendants' motion to dismiss as to Plaintiff's Section 1983 claim against Pope in his individual capacity. Furthermore, the Court adopts the Magistrate Judge's recommendation in part, granting Defendants' motion to dismiss as to Plaintiff's official capacity claims against Defendants; however, the Court will reject the Magistrate Judge's recommendation that the official capacity claims be dismissed with prejudice and the Court dismisses these claims without prejudice, pursuant to Fifth Circuit case law. Last, the Court will reject the Report and Recommendation in part, granting Defendants' motion to dismiss with prejudice as to Plaintiff's Section 1983 individual claims against McVea for failure to state a claim upon which relief can be granted. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss[164] is **GRANTED IN PART** to the extent that Plaintiff's official capacity claims against all Defendants are dismissed without prejudice, pursuant to Rule 12(b)(1).

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss[165] is **GRANTED IN PART** to the extent that Plaintiff's claims against Defendants LeBlanc, McCain, Bickham, Kelly,

---

[164] Rec. Doc. 33.

[165] Rec. Doc. 33.

Tynes, Knight, Singh, Young, and McVea are dismissed with prejudice for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6).

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss[166] is **DENIED IN PART** as to Plaintiff's Section 1983 individual claims against Defendant Pope.

**IT IS FURTHER ORDERED** that Defendants' prior Motion to Dismiss, Rec. Doc. 27, is **DENIED AS MOOT**, as Plaintiff subsequently filed an Amended Complaint and Defendants filed a new motion to dismiss.

**NEW ORLEANS, LOUISIANA**, this 16th day of August, 2018.

> **NANNETTE JOLIVETTE BROWN**
> **CHIEF JUDGE**
> **UNITED STATES DISTRICT COURT**

---

[166] Rec. Doc. 33.