# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KENNETH IDEL**                                         **CIVIL ACTION**

**VERSUS**                                               **NO. 17-1553**

**JAMES M. LEBLANC, et al.**                             **SECTION "G"(4)**

## ORDER AND REASONS

Before the Court are Defendant Richard Pope's ("Defendant") Motion for Summary Judgment[1] and Plaintiff Kenneth Idel's ("Plaintiff") "Motion to Strike Affidavit and Documents."[2] In this litigation, Plaintiff alleges that Defendant and several other individuals violated Plaintiff's constitutional rights in relation to a fight that occurred while Plaintiff was incarcerated.[3] Defendant filed the instant motion for summary judgment, arguing that Plaintiff's claims are barred by the *Heck* doctrine.[4] Plaintiff filed an opposition, asserting that the *Heck* doctrine does not apply because Plaintiff does not seek invalidation of his conviction or restoration of his time served credits.[5] Plaintiff also filed a motion to strike, arguing that the exhibits Defendant attached to the motion for summary judgment violate the Federal Rules of Civil Procedure and Evidence.[6] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court will convert Plaintiff's Motion to Strike to objections to the evidence, deny the objections as moot, and deny Defendant's Motion for Summary Judgment.

---

[1] Rec. Doc. 53.

[2] Rec. Doc. 60.

[3] Rec. Doc. 1 at 1–2.

[4] Rec. Doc. 53-1 at 6.

[5] Rec. Doc. 61 at 7.

[6] Rec. Doc. 60.

# I. Background

## A.    *Factual Background*

In the Complaint, Plaintiff, a former inmate housed at Rayburn Correctional Center ("RCC"), alleges that officials and employees at RCC violated his constitutional rights when responding to a fight that occurred among inmates.[7]  Plaintiff states that on November 10, 2015, a physical altercation occurred between Plaintiff and another inmate, and at least four correctional officers intervened to break up the fight.[8] Plaintiff alleges that while Defendant Richard Pope was attempting to restrain Plaintiff, Defendant threw Plaintiff to the floor, dragged him, and then after Plaintiff was handcuffed, allegedly "dropped his right knee on [Plaintiff's] head, which smashed [Plaintiff's] face against the concrete floor and broke [Plaintiff's] jaw."[9] Plaintiff contends that Defendant used excessive force against him and that the RCC staff and leadership were deliberately indifferent in their alleged failure to provide Plaintiff with constitutionally required medical care.[10] Plaintiff asserts that these individuals violated the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and the Louisiana Constitution.[11]

## B.    *Procedural Background*

On February 23, 2017, Plaintiff filed a Complaint seeking damages under 42 U.S.C. § 1983 from the following defendants: James M. LeBlanc, Sandy McCain, Keith Bickham, Beverly Kelly, Jonathan Tynes, Richard Pope, Theresa Knight, Dr. Casey McVea, Dr. Raman Singh, and Tamyra

---

[7] Rec. Doc. 32 at 1–2.

[8] *Id.* at 8.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 2.

Young.[12] On October 17, 2017, Plaintiff filed an amended complaint.[13] On October 31, 2017, Defendants filed a motion to dismiss all claims.[14] On August 16, 2018, the Court dismissed all of Plaintiff's claims except his § 1983 claim against Defendant Richard Pope for excessive use of force.[15]

On December 6, 2018, Defendant Pope filed a motion for summary judgment.[16] On January 22, 2019, Plaintiff filed a motion to strike the documents attached to the motion for summary judgment.[17] Also on January 22, 2019, Plaintiff filed an opposition to Defendant's motion for summary judgment.[18]

## II. Parties' Arguments

### A.  The Motion for Summary Judgment

#### 1.  Defendant's Arguments in Support of the Motion for Summary Judgment

In the motion, Defendant argues that Plaintiff's claim is barred by the *Heck* doctrine because following a disciplinary hearing regarding the fight, Plaintiff lost good-time credits, which is considered a conviction under *Heck*.[19] Defendant cites language from *Heck v. Humphrey*,[20] wherein the United States Supreme Court declared that a person cannot recover damages on a § 1983 claim if a judgment in the plaintiff's favor would imply the invalidity of a conviction or

---

[12] Rec. Doc. 1.

[13] Rec. Doc. 32.

[14] Rec. Doc. 33.

[15] Rec. Doc. 43.

[16] Rec. Doc. 53.

[17] Rec. Doc. 60.

[18] Rec. Doc. 61.

[19] Rec. Doc. 53-1 at 6.

[20] 512 U.S. 477 (1994).

sentence.[21] The only way to prevail, according to Defendant, is for a plaintiff to prove that the underlying conviction has already been invalidated in some way.[22] Defendant contends that "the en banc Fifth Circuit, in *Clarke v. Stalder*, clarified that, 'A conviction, for purposes of *Heck*, includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits.'"[23]

Defendant attaches to the motion several statements of the officers that responded to the fight in question and records from a disciplinary hearing held after the fight.[24] Defendant includes with these documents and affidavit of Rhonda Z. Weldon, a paralegal for the Department of Public Safety and Corrections, who attests that the documents constitute the entire record from the disciplinary proceedings.[25] Using these documents, Defendant alleges that the disciplinary hearing regarding Plaintiff's defiance, aggravated disobedience, and fighting ultimately resulted in the following for Plaintiff: "1) the loss of yard and recreation privileges for eight weeks, 2) the loss of telephone privileges for eight weeks, 3) the loss of canteen privileges for eight weeks, and 4) the forfeiture of one hundred and seventy-one (171) days of good time credit."[26] Defendant asserts that because Plaintiff's disciplinary hearing resulted in the loss of good time credits, Plaintiff's § 1983 claim implicates a *Heck* doctrine analysis.[27]

Defendant presents case law from district and appellate courts as support for the proposition that when a plaintiff alleges excessive force by officers during a fight, and that fight

---

[21] Rec. Doc. 53-1 at 6.

[22] *Id.*

[23] Rec. Doc. 53-1 at 6 (quoting *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998)).

[24] *Id.* at 2–4.

[25] Rec. Doc. 53-3 at 1.

[26] Rec. Doc. 53-1 at 2.

[27] *Id.*

ultimately resulted in a disciplinary hearing, the plaintiff's § 1983 claim is barred because an analysis of excessive force would call into question the disciplinary panel's ruling that the plaintiff should be punished for fighting.[28] Defendant contends that here, if the Court evaluates Plaintiff's excessive force claim against Defendant, it "'necessarily includes reconsideration of the disciplinary board's findings that [Plaintiff] engaged in aggravated disobedience and physical and verbal defiance which prompted the use of force by the named defendants.'"[29] Therefore, Defendant argues that Plaintiff can only prevail on his § 1983 claim if Plaintiff can show that the disciplinary hearing conviction has been invalidated.[30] Defendant asserts that because Plaintiff cannot currently show this invalidation, Plaintiff's § 1983 claim is barred by the *Heck* doctrine and the Court should dismiss the claim.[31]

### 2. Plaintiff's Arguments in Opposition to the Motion for Summary Judgment

In opposition, Plaintiff argues that his § 1983 claim is not barred by the *Heck* doctrine because he "does not ask for a reversal of any of the final dispositions, nor for the restoration of lost good-time credits."[32] Plaintiff contends that *Heck* only bars a § 1983 claim when a plaintiff would have to prove the unlawfulness of his conviction in order to be successful.[33] Plaintiff presents the Supreme Court case *Muhammad v. Close*,[34] and its holding that "*Heck*'s [bar to § 1983 damages] is not . . . implicated by a prisoner's challenge that threatens no consequence for his

---

[28] *Id.* at 6–7.

[29] *Id.* at 8 (quoting *Pellegrin v. Seal*, No. 15-6335, 2016 U.S. Dist. LEXIS 161963, at *9 (E.D. La. Nov. 7, 2016) *aff'd by Pellegrin v. Seal,* No. 15-6335, 2016 U.S. Dist. LEXIS 161755 (E.D. La. Nov. 22, 2016)).

[30] *Id.*

[31] *Id,* at 8–9.

[32] Rec. Doc. 61 at 4.

[33] *Id.* at 5.

[34] 540 U.S. 749 (2004).

conviction or the duration of his sentence.'"[35] Plaintiff avers that *Heck* only poses a challenge to his claim if the disciplinary determination affected the duration of his overall sentence and a judgment in his favor on the § 1983 claim would render this disciplinary determination invalid.[36]

Plaintiff, however, maintains that he "is not requesting the expungement of the misconduct findings or the restoration of his lost good-time credits."[37] Plaintiff asserts that he is only seeking damages for how the excessive force violated his constitutional rights.[38] Plaintiff then describes the Fifth Circuit case *Bush v. Strain*,[39] wherein the court declared that "the determination of whether such a claim is barred by *Heck* 'is analytical and fact-intensive, requiring [courts] to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction.'"[40] Plaintiff insists that success on his § 1983 claim would not challenge his convictions for disobedience, defiance, and fighting, and thus, success on this claim would not negate anything done at the disciplinary hearing.[41]

Next, Plaintiff distinguishes the cases Defendant cites from other federal courts.[42] Plaintiff argues that in cases where district courts found an excessive force claim barred by *Heck*, the plaintiffs were disciplined under a charge of battering a corrections officer.[43] Plaintiff states that his disciplinary charges were different and the Court could analyze whether Defendant used

---

[35] Rec. Doc. 61 at 6 (quoting *Muhammad*, 540 U.S. at 751).

[36] *Id.* at 7.

[37] *Id.*

[38] *Id.*

[39] 513 F.3d 492, 497 (5th Cir. 2008).

[40] Rec. Doc. 61 at 8 (quoting *Bush*, 513 F.3d at 497).

[41] *Id.* at 8–9.

[42] *Id.* at 10–11.

[43] *Id.* at 10.

excessive force without challenging the finding that Plaintiff had engaged in disobedience, defiance, and fighting.[44] Plaintiff also contends that *Heck* can be inapplicable in cases where the excessive force occurred after the arrestee had ceased resisting because the excessive force is separate from the arrestee's behavior.[45]

Plaintiff asserts that his § 1983 claim alleges that "Defendant Pope used excessive force against him *after* he was subdued and no longer defying orders from RCC officers."[46] Thus, Plaintiff argues that the "allegations concerning Defendant Pope's unconstitutional treatment of him is wholly separate and apart from the validity of his prison infractions," and a "[f]inding that Defendant Pope used excessive force on [Plaintiff] does not 'necessarily require the plaintiff to prove the unlawfulness of his [prison infraction] conviction.'"[47] Ultimately, Plaintiff argues, he could be guilty of disobedience, defiance, and fighting while Defendant can also be culpable for excessive force.[48] According to Plaintiff, "[t]he two are not mutually exclusive."[49]Thus, Plaintiff argues that his § 1983 is not barred by *Heck* and the Court should deny Defendant's motion for summary judgment.[50]

---

[44] *Id.*

[45] *Id.* at 8–9.

[46] *Id.* at 14.

[47] *Id.* (quoting *Heck*, 512 U.S. at 486).

[48] *Id.*

[49] *Id.*

[50] *Id.* at 19–20.

### B.    The Motion to Strike

#### 1.    Plaintiff's Arguments in Support of the Motion to Strike

In the motion to strike, Plaintiff argues that the Court should not consider the affidavit and administrative documents attached to Defendant's motion for summary judgment because: (1) the affidavit does not comply with Federal Rule of Civil Procedure 56(c)(4); (2) the administrative documents do not represent the entire administrative proceedings; and (3) all of the documents are hearsay that are not admissible under Federal Rule of Evidence 803(b).[51]

First, Plaintiff asserts that the affidavit of Rhonda Weldon ("Ms. Weldon") does not comply with Federal Rule of Civil Procedure 56(c)(4).[52] Plaintiff claims that Fifth Circuit precedent requires that statements be based on personal knowledge and not upon information and belief, but Ms. Weldon only states in the affidavit that the "above is true and correct *to the best of her information and belief.*"[53] Plaintiff contends that because the facts are not based on "personal belief," the affidavit fails the first requirement of the rule.[54] Further, Plaintiff asserts that the affidavit states that it will set forth facts that would be admissible in evidence, but it actually contains none of these facts.[55]

Next, Plaintiff alleges that the affidavit is likely part of Defendant's attempt to admit the administrative record under the hearsay exception for business records.[56] Yet, Plaintiff insists that the affidavit fails to meet the requirements for the business records exception under Federal Rule

---

[51] Rec. Doc. 60-1 at 2.

[52] *Id.* at 2.

[53] *Id.* at 3 (emphasis in original).

[54] *Id.*

[55] *Id.* at 3–4.

[56] *Id.*

of Evidence 803(6).[57] Specifically, according to Plaintiff, Ms. Weldon fails to meet the requirements of a custodian because she does not lay a foundation regarding why the business records exception applies, does not state how she came to possess the records, does not explain her duties in her paralegal position, and does not explain how she is familiar with the type of record presented.[58] Additionally, Plaintiff asserts that the administrative records were not made in the "ordinary course of business;" they were prepared in anticipation of ligation because they are part of the requirements for inmates who want to pursue civil claims.[59]

Finally, Plaintiff insists that despite Ms. Weldon's statement in the affidavit that the attached pages were "true and exact copies of the entire administrative proceedings," the documents attached to the motion by Defendant are an incomplete record of the disciplinary proceedings.[60] Plaintiff states that Ms. Weldon's affidavit alludes to the following additional documents but does not include them: an employee accident report, medical records from Nurse Robin Chastant, and reports generated by Major Frank Cleland.[61] Plaintiff also asserts that the Louisiana Department of Corrections is required to maintain five years of audio recordings of disciplinary hearings, but Defendant only produces paper documents from the hearing and not the actual recording.[62] Plaintiff argues that because Defendant fails to include all relevant material from the disciplinary hearing, Ms. Weldon made a false statement in the affidavit when she insisted that the exhibits included the full record of the disciplinary proceeding.[63] Therefore, Plaintiff urges

---

[57] *Id.* at 4.

[58] *Id.*

[59] *Id.* at 6.

[60] *Id.* at 4.

[61] *Id.* at 4–5.

[62] *Id.* at 5.

[63] *Id.*

the Court to strike all the records and exclude from consideration of Defendant's motion for summary judgment.[64]

### 2. Defendant's Arguments in Opposition to the Motion to Strike

Defendant did not file an opposition to the motion to strike, which was set for submission on February 13, 2019.

## III. Legal Standard

### A. *Standard on a Motion for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[65] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[66] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[67] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[68] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for

---

[64] *Id.*

[65] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[66] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[67] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[68] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

trial.[69]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[70] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[71] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[72] In doing so, the nonmoving party may not rest upon mere allegations or denials in its pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[73]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[74] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit

---

[69] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[70] *Celotex*, 477 U.S. at 323.

[71] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (citing *Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir. 1991)).

[72] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[73] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[74] *Little*, 37 F.3d at 1075.

a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[75]

## B.     *Standard on a Motion to Strike*

Pursuant to Federal Rule of Civil Procedure 56(c)(2), on a motion for summary judgment, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[76] After the 2010 amendments to Rule 56, "[t]here is no need to make a separate motion to strike" inadmissible evidence.[77] According to the comments following the revised rule:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted to the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated . . . . [78]

The Fifth Circuit has held that it is therefore proper for motions to strike evidence, presented in support or in opposition to a motion for summary judgment, to be treated as objections to the evidence.[79] Accordingly, the Court will convert the motion to strike into an objection and consider it as such.

---

[75] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[76] Fed. R. Civ. P. 56(c)(2).

[77] Fed. R. Civ. P. 56(c)(2) advisory committee's notes to 2010 amendment.

[78] *Id.*

[79] *See Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012) (adopting a district court opinion treating a motion to strike an affidavit as an objection).

## IV. Analysis

### A.    *Striking the Affidavit and the Administrative Record*

Treating Plaintiff's motion to strike as an objection to the evidence presented by Defendant, Plaintiff argues that the affidavit and administrative record attached to the motion for summary judgment should be stricken from the record because: (1) the documents do not comply with Federal Rule of Civil Procedure 56(c)(4), (2) the documents do not include the entire administrative proceedings they purport to detail, and (3) the documents are inadmissible hearsay not subject to the business records exception of Federal Rule of Evidence 803(6).[80]

Pursuant to Federal Rule of Civil Procedure 56(c)(4) an affidavit used to support or oppose a motion for summary judgment must: (1) "be made on personal knowledge," (2) "set out facts that would be admissible in evidence," and (3) show that the affiant "is competent to testify on the matters stated therein." Here, Defendant presents the affidavit of Ms. Weldon attesting that the documents attached to her affidavit are "true and exact copies of the entire administrative proceedings as maintained in the normal course of business by the Department of Public Safety and Corrections, regarding ADMINISTRATIVE REMEDY PROCEDURE [ARP] NO. RCC-2015-879, filed by Plaintiff, KENNETH IDEL, DOC #371093, in connection with the above-captioned matter."[81] Ms. Weldon further attests that she is employed as a paralegal for the Department of Public Safety and Corrections, Legal Services, Office of the Secretary, and that the statements made in the affidavit are "true and correct to the best of her information and belief."[82] Ms. Weldon's affidavit does not explain whether she is competent to testify that the documents

---

[80] Rec. Doc. 60-1 at 2.

[81] Rec. Doc. 53-3 at 1.

[82] *Id.* at 1–2.

are "true and exact copies of the entire administrative proceedings" or whether these statements are based on her personal knowledge.

Except in limited circumstances, an out-of-court statement offered to prove the truth of the matter asserted is hearsay, and subject to certain exceptions, is not admissible as evidence.[83] Federal Rule of Evidence 803(6) provides that "[a] record of an act, event, condition, opinion, or diagnosis" is not hearsay if:

> (A)  the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B)  the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C)  making the record was a regular practice of that activity;
>
> (D)  all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E)  the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Plaintiff objects to Ms. Weldon's affidavit because he alleges that it is insufficient to introduce the administrative record under the business records exception. The affidavit fails to establish that the record was made by someone with knowledge or that Ms. Weldon is a custodian of the records as required under Federal Rule of Evidence 803(6).[84] Nevertheless, there is no indication that the evidence would be inadmissible at trial.[85] Though Plaintiff argues that the documents were created in anticipation of litigation, under Louisiana law, the Louisiana Department of Corrections conducts administrative hearings to address all inmate grievances,

---

[83] *See* Fed. R. Evid. 801–805.

[84] *See Coleman v. Jason Pharm.*, 540 F. App'x 302, 306 (5th Cir. 2013) (citing *Brauninger v. Motes,* 260 Fed. Appx. 634, 636–37 (5th Cir. 2007)).

[85] *See* Fed. R. Civ. P. 56(c)(2).

whether or not the inmate intends to pursue litigation.[86] Thus, the documents could have been "kept in the course of a regularly conducted business activity."[87]

The Court also notes that Plaintiff's objections to Defendant's exhibits are based on form and not substance. Plaintiff does not contest the main fact that the administrative documents support—that Plaintiff received a loss of good time credits because of guilty dispositions in disciplinary hearings. Plaintiff admits this fact in both his opposition to the motion for summary judgment and his statement of contested facts.[88] In fact, Plaintiff relies directly on the administrative documents to make his argument that he is not challenging his "conviction."[89]

Finally, to the extent that the documents are used by Defendant to support the claim that Plaintiff resisted arrest, Plaintiff likewise relies on these documents. In Plaintiff's response to Defendant's statement of uncontested facts, Plaintiff uses the administrative documents to assert that there is a genuine dispute of material fact on the issue of resisting arrest, and Plaintiff lists his own facts and presents his own affidavits to counter those of Defendant.[90] Further, the Court finds, as discussed below, that Plaintiff presents sufficient evidence to show that there remains a genuine dispute of material fact on the issue of whether he ceased resisting arrest before the excessive force. Thus, even if the Court considers the administrative documents in deciding the motion, Plaintiff will survive the motion for summary judgment. Accordingly, the Court will deny the objection to Defendant's evidence is moot.

---

[86] *See* La. Stat. Ann. § 15:1171.

[87] Fed. R. Evid. 803(6)(B).

[88] *See* Rec. Doc. 61 at 2–4; Rec. Doc. 61-1 at 1.

[89] *Id.*

[90] *See* Rec. Doc. 61-1 at 1.

## B.  Summary Judgment

Defendant contends that the *Heck* doctrine bars Plaintiff's § 1983 claim because an examination of whether Defendant used excessive force would challenge the validity of Plaintiff's guilty convictions from the disciplinary hearings.[91] Plaintiff insists that his § 1983 claim will not affect his conviction because the defiance, disobedience, and fighting convictions are separate from the excessive force allegation; particularly because Plaintiff asserts that Defendant's excessive force occurred after Plaintiff's defiance, disobedience, and fighting.[92]

In the Fifth Circuit,

"[i]t is well settled under *Heck* that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that 'violation arose from the same facts attendant to the charge for which he was convicted, unless he proves "that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."'"[93]

Furthermore, "[a] conviction, for purposes of *Heck*, includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits."[94]

When applying the *Heck* principle to § 1983 excessive force claims, "the determination of whether such claims are barred is analytical and fact-intensive, requiring [courts] to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal

---

[91] Rec. Doc. 53-1.

[92] Rec. Doc. 61 at 14.

[93] *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (quoting *Ballard v. Burton,* 444 F.3d 391, 396 (5th Cir. 2006) (quoting *Heck v. Humphrey*, 512 U.S. 477 (1994))).

[94] *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (citing *Edwards v. Balisok*, 520 U.S. 641, 644 (1997)) (internal quotation marks omitted).

conviction."[95]  "By proving an excessive force claim, a plaintiff will not invariably invalidate his conviction."[96] "[T]he *Heck* determination depends on the nature of the offense and of the claim."[97] "[A] claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance."[98] Therefore, the crux of the analysis is on whether the excessive force was "temporally and conceptually distinct" from the plaintiff's actions that resulted in his conviction.[99]

In *Hudson v. Hughes*, the Fifth Circuit determined that a § 1983 action for excessive force could not proceed because the plaintiff's underlying conviction for battery of an officer rested on a factual finding that the plaintiff's assault on an officer warranted a response of force.[100] The Court reasoned that analyzing the excessive force claim would necessarily require an examination into plaintiff's level of resistance and whether his battery of the officer was justified; *Heck* thus barred the plaintiff's claim because it would undermine the plaintiff's conviction.[101] Similarly, in *Sappington v. Bartee*, the Fifth Circuit found that *Heck* barred a § 1983 claim for excessive force because the underlying conviction for aggravated assault on an officer included a factual finding that the plaintiff caused "serious bodily injury" to the officer.[102] The Fifth Circuit held that because

---

[95] *Id.*

[96] *Arnold v. Town of Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004) (citing *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996)).

[97] *Id.*

[98] *Bush*, 513 F.3d at 498.

[99] *Id.*

[100] 98 F.3d 868 (5th Cir.1996).

[101] *Id.*

[102] *Sappington v. Bartee*, 195 F.3d 234, 237 (5th Cir. 1999).

the Texas statute allowed the officer to use any level of force against plaintiff in response to plaintiff's aggravated assault, the officer's force could not be deemed excessive under *Heck*.[103]

The Fifth Circuit has also held that *Heck* barred an excessive force claim where the "complaint present[ed] a single narrative of an unprovoked police attack; [and plaintiff's] "broad claims of innocence relate to the entire arrest encounter, and not merely a discrete part of it."[104] The court found that because the plaintiff did not attempt to distinguish his unlawful conduct before the arrest from his conduct after he was restrained, he did not allege, as required under *Heck*, that his § 1983 claim was temporally and conceptually distinct from the excessive force claim.[105]

In contrast, the Fifth Circuit in *Ballard v. Burton*, determined that *Heck* did not bar a plaintiff's excessive force claim when the underlying conviction for simple assault of a law enforcement officer did not require an analysis of whether the plaintiff's force was reasonably justified.[106] The *Ballard* court found that the plaintiff's assault was conceptually different from the alleged excessive force because the plaintiff could have committed the simple assault on the two target officers, who were not accused of excessive force, without that having any effect on the arresting officer's use of excessive force.[107] Further, the assault occurred before the arresting officer applied force.[108] Therefore, plaintiff's success on the excessive force claim would not undermine the simple assault conviction and *Heck* did not bar the plaintiff's § 1983 claim.[109]

---

[103] *Id.*

[104] *Ducksworth v. Rook*, 647 F. App'x 383, 386 (5th Cir. 2016) (quoting *Daigre v. City of Waveland,* 549 Fed. Appx. 283, 286 (5th Cir. 2013)).

[105] *Id.*

[106] 444 F.3d 391 (2006).

[107] *Id.*

[108] *Id.*

[109] *Id.*

Likewise, in *Bush v. Strain*, the Fifth Circuit held that *Heck* did not bar a plaintiff's excessive force claim where her underlying conviction for resisting arrest could be unaffected by whether the officer used excessive force after the plaintiff had stopped resisting.[110] In *Bush*, the plaintiff was arrested for simple battery and resisting arrest after a disturbance at a car wash.[111] The plaintiff alleged that the arresting officer intentionally pushed her head into a car window after she was arrested, handcuffed, and compliant.[112] The Magistrate Judge granted a motion for summary judgment, finding that *Heck* barred the plaintiff's § 1983 excessive force claim because a judgment in her favor would challenge whether she had resisted arrest.[113] The Fifth Circuit disagreed.[114]

The Fifth Circuit found that the plaintiff's § 1983 claim rested on the assertion that the excessive force occurred after she ceased to resist arrest, and an analysis of whether the officer applied excessive force at that time did not necessarily negate whether plaintiff had resisted before she became compliant.[115] Thus, the court found, the resisting arrest conviction and the excessive force claim could be analyzed separately if the excessive force happened after the plaintiff was compliant.[116] The Fifth Circuit also noted that the state court did not make a finding regarding how long the plaintiff had resisted or at what point the plaintiff was injured, and the court had "determined that the duration of resistance and the cause of [plaintiff's] injuries were irrelevant to

---

[110] *Bush*, 513 F.3d at 498–99.

[111] *Id.* at 495–96.

[112] *Id.*

[113] *Id.* at 496.

[114] *Id.* at 497–500.

[115] *Id.* at 498–99.

[116] *Id.*

the determination of whether she had resisted arrest."[117] Based on these factual ambiguities regarding whether and when plaintiff ceased resistance, the Fifth Circuit held that there were "material, disputed facts pertinent to [plaintiff's] excessive force claim that were not necessary to sustain [plaintiff's] resisting arrest conviction."[118] Therefore, the Fifth Circuit held, the plaintiff could have a § 1983 claim for excessive force that occurred after she was restrained, and the motion for summary judgment should be denied.[119]

Here, Plaintiff argues that his § 1983 claim is factually similar to *Bush*. Plaintiff's underlying convictions for defiance, disobedience, and fighting relate to his contact with the other inmate and his resistance to the officers' commands to cease fighting. It is possible both for Plaintiff to have engaged in these behaviors and for Defendant to have applied excessive force after Plaintiff had ceased these actions. The analyses can be separate, and an examination of whether Defendant's force was excessive under the circumstances does not necessarily implicate an examination into whether Plaintiff had a fight with the other inmate and whether Plaintiff disobeyed orders to stop fighting. Both sets of events could have happened in a conceptually distinct manner. What the Court must determine, however, is whether success on the excessive force claim would negate any elements of Plaintiff's defiance, disobedience, and fighting convictions.[120]

Unlike the plaintiff in *Ducksworth*, Plaintiff here admits that he engaged in fighting and that he resisted the officer's commands.[121] Plaintiff also admits that the officers struggled to

---

[117] *Id.* at 499.

[118] *Id.*

[119] *Id.*

[120] *See id.* at 497.

[121] Rec. Doc. 20 at 8.

restrain him and end his resistance.[122] Based on these facts, Plaintiff concedes that he was guilty of defiance, disobedience, and fighting and that he obtained guilty convictions for each.[123] Therefore, Plaintiff asserts, his § 1983 claim would not negate any elements of his actions before Defendant's alleged excessive force.[124]

Rather, like the plaintiff in *Bush*, Plaintiff alleges that Defendant applied excessive force after he had stopped resisting and was subdued.[125] As the Fifth Circuit noted in *Bush*, if Plaintiff had actually ceased resisting at the time that Defendant applied excessive force, then Defendant could be liable for excessive force without calling into question whether Plaintiff had engaged in defiance, disobedience, and fighting prior to the force.[126] This would mean that a judgment in favor of Plaintiff on the § 1983 claim would not undermine the validity of his prior convictions.[127] Therefore, Plaintiff's claim would not be barred by *Heck* if he ceased resisting before the application of excessive force.

The issue of when Plaintiff stopped resisting, however, remains a disputed issue of material fact. In the amended complaint, Plaintiff alleges that after he was on the ground and handcuffed, Defendant "dropped his knee on [Plaintiff's] head which smashed his face against the concrete floor and broke [Plaintiff's] jaw."[128] In contrast, Defendant relies on his statement, and the statements of other corrections officers, to support his assertion that he and two other officers "had to use force to bring [Plaintiff] to the ground to gain his compliance and control. After gaining

---

[122] *Id.*

[123] Rec. Doc. 61 at 11–12.

[124] *Id.* at 14.

[125] *Id.*

[126] *Bush*, 513 F.3d at 498–99.

[127] *See Ballard*, 444 f.3d at 401.

[128] Rec. Doc. 32 at 8.

control and compliance of [Plaintiff], Lt. Dillon notes that he properly restrained [Plaintiff] and then [Plaintiff] was helped to his feet and escorted to the infirmary per protocol."[129] Contrary to Plaintiff's allegations, Defendant does not state that he had contact with Plaintiff on the ground and he does not include facts regarding whether he dropped his knee on Plaintiff's head. Additionally, Defendant does not detail whether Plaintiff continued to resist after he was on the ground.

Further, the Court finds conflicting facts in the administrative documents submitted by Defendant. In a First Step Response Form dated March 17, 2016, the unit head states that "officers had no choice but to take [Plaintiff] to the ground to stop [him] from resisting…Once [Plaintiff] was on the ground [he was] held there until [he was] properly restrained. Once [he was] properly restrained [he] came into compliance with their orders and [was] assisted to [his] feet."[130] However, Officer Dillon listed in his Unusual Occurrence Report that "[w]ith the assist of Lt. James Seal and [Defendant] Richard Pope [they] directed [Plaintiff] to [the] floor and all of his actions stopped. Once [Plaintiff] was properly restrained he was helped to his feet…"[131]

These conflicting accounts, along with Plaintiff's and Defendant's incomplete descriptions, indicate that there is a genuine dispute of fact regarding whether Plaintiff had ceased resisting before Defendant applied the alleged excessive force. The Fifth Circuit in *Bush* determined that conflicting evidence regarding when the plaintiff ceased resisting was sufficient to defeat a motion for summary judgment.[132] This Court follows that precedent. Because there remains in dispute a genuine issue of material fact, the court will deny summary judgment.

---

[129] Rec. Doc. 53-1 at 3–4.

[130] Rec. Doc. 53-3 at 8.

[131] *Id.* at 11.

[132] *Bush*, 513 F.3d at 499–500.

## V. Conclusion

Based on the foregoing, the Court converts the motion to strike into objections. Plaintiff's objections are moot as Defendant's exhibits do not appear to be inadmissible at trial and Plaintiff himself relies on the material. Further, Plaintiff will survive the motion for summary judgment so the Court's consideration of the material at this time does not create prejudice to Plaintiff. Thus, the Court overrules the objections lodged by Plaintiff. The Court also finds that a genuine issue of material fact remains on whether Plaintiff ceased resistance before the alleged excessive force. Therefore, the Court denies Defendant's motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Kenneth Idel's "Motion to Strike Affidavit and Documents"[133] is converted to objections to the Court's consideration of the evidence and the objections are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant Richard Pope's "Motion for Summary Judgment"[134] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 29th day of April, 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[133] Rec. Doc. 60.

[134] Rec. Doc. 53.